# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | Case No. 1:18CR00020 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| | ) | |
| **SHADE CARLTON WORKMAN,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| Defendant. | ) | |

*Lena L. Busscher, Assistant United States Attorney, Abingdon, Virginia, for United States; Timothy W. McAfee, The McAfee Law Firm, Big Stone Gap, Virginia, for Defendant.*

A jury convicted the defendant, Shade Carlton Workman, of making false statements to the FBI, soliciting and accepting a bribe as a member of an agency that receives federal funds, and obstructing justice. Workman has moved for acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government's evidence was insufficient to support his convictions for making false statements and federal program bribery. In particular, Workman contends that the government failed to prove that the value of the services he provided in exchange for the bribe was $5,000 or more, a necessary element of the federal program bribery charge. For the reasons that follow, I will deny his motions.

I.

The following facts were presented at trial and are recited in the light most favorable to the government.

As a Special Agent for the Virginia State Police, Workman supervised and served as a member of the Tazewell County Drug Task Force. In March or April of 2016, Workman and other members of the task force met with KK, who had been arrested for shoplifting and was being held without bond. It was agreed that the task force would secure her release on bond, and in return, she would work for them as a confidential informant purchasing drugs from local drug dealers. After the meeting, KK was released on a $5,000 unsecured bond. KK testified that being released was important to her because it allowed her to be with her two children. She also stated that she couldn't put a price on the value of being with her children.

Following her release on bond, KK began working as a confidential informant for the task force. After one of her first controlled buys, she and Workman left the location of the buy together in his truck. Workman stopped the truck in a parking lot, where he made sexual advances on KK and told her that as long as things went well, she would be able to stay home with her children. KK understood his statement to mean that if she engaged in sexual activity with Workman, he would prevent her bond from being revoked. KK had sexual relations with Workman approximately 15 times during the period in which she

was a confidential informant because she believed that he had control over her continued release on bond. At the end of her cooperation with the task force, its members spoke to the prosecuting attorney on her behalf and advocated for her lenient treatment.

Workman was later arrested and charged with, among other things, making false statements to the FBI (Count One), soliciting or accepting a bribe as an agent of an agency that receives federal funds (Count Two), using a facility in interstate commerce with the intent to carry on bribery (Count Five), obstructing justice by hindering the communication of a federal crime to law enforcement (Count Nine), and obstructing justice by altering, destroying, or concealing a record with the intent to impede the investigation of a matter within the jurisdiction of the FBI (Count Twelve).[1]

At the conclusion of the government's case in chief, Workman made an oral motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, arguing that the government failed to prove a necessary element of Count Two. I reserved decision on the motion, Fed. R. Crim. P. 29(b), and the jury thereafter found the defendant guilty of Counts One, Two, and Twelve. Following the jury's verdict, Workman filed a written motion for a judgment of acquittal, challenging

---

[1] The charges not listed were dismissed by the government prior to the jury's deliberations.

the basis of his conviction on Count One and restating his argument regarding Count Two.[2] Workman's oral motion has been briefed and is ripe for decision.[3] For the reasons discussed below, I will also dispose of Workman's written motion.

## II.

## A.

Following the jury's verdict on March 22, 2019, I entered an order requiring that any additional motions for judgment of acquittal be made no later than April 5, in accord with Rule 29(c)(1). Workman filed his second Motion for Acquittal, which addressed Count One in addition to his earlier arguments regarding Count Two, on April 12.

I may extend the time for filing if a defendant failed to file a motion for judgment of acquittal by the deadline due to excusable neglect. Fed. R. Crim. P. 45(b)(1). "In determining whether a party has shown excusable neglect, a court will consider: (1) the danger of prejudice to the non-moving party; (2) the length of delay and its potential impact on judicial proceedings; (3) the reason for the delay; and (4) whether the movant acted in good faith." *Colony Apartments v. Abacus*

---

[2] Workman's written motion states that he seeks a judgment of acquittal on Counts One and Five. However, I will treat his motion as seeking acquittal on Count Two rather than Count Five, as the jury found him not guilty of Count Five, and his motion refers to his arguments at trial regarding the elements of Count Two.

[3] I will dispense with oral argument because the facts and legal contentions are adequately presented before the court and argument would not significantly aid the decisional process.

*Project Mgmt., Inc.*, 197 F. App'x 217, 223 (4th Cir. 2006) (unpublished). The reason for the delay is the most important factor. *Id.* "A party that fails to act with diligence will be unable to establish that his conduct constituted excusable neglect . . . ." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 413 (4th Cir. 2010).

Workman failed to act with diligence and did not move to extend the time to file his second motion or provide a reason for his delay. Accordingly, he has not shown excusable neglect, and I will deny his second Motion for Acquittal as untimely. I now turn to his oral motion regarding Count Two, based on the evidence at the time the ruling was reserved. Fed. R. Crim. P. 29(b).

### B.

Count Two charged that Workman, while an agent of the Virginia State Police, solicited and accepted sexual favors from confidential informant KK, intending to be influenced or rewarded in connection with any business or transaction of the state police involving anything of value of $5,000 or more — that is, (1) ensuring the continued release of confidential informant KK on bond, and (2) the making of a favorable sentencing recommendation to a state prosecutor on behalf of Confidential Informant KK — in violation of 18 U.S.C. §§ 2 and 666(a)(1)(B). In his Motion for Acquittal, Workman argues that the government failed to prove a necessary element of this charge — that he intended to be influenced in connection with a transaction involving anything of value of $5,000

or more — because the government did not prove that the continued release of KK on bond or a favorable sentencing recommendation on behalf of KK had a value of $5,000 or more.

On review of a motion for a judgment of acquittal under Rule 29, the court "must sustain the verdict if there is substantial evidence, viewed in the light most favorable to the Government, to uphold the jury's decision." *Burks v. United States*, 437 U.S. 1, 17 (1978). In the context of a criminal conviction, substantial evidence is evidence that "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *United States v. Newsome*, 322 F.3d 328, 333 (4th Cir. 2003) (citation omitted). The court should consider "circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

To prove a violation of 18 U.S.C. § 666(a)(1)(B), the government must prove that, among other things, the charged conduct involved anything of value of $5,000 or more. *United States v. Tillmon*, No. 17-4648, 2019 WL 921534, at *11 (4th Cir. Feb. 26, 2019). Stated differently, "this element requires proof of the value of whatever was exchanged for the bribe" or, in other words, "the value of the subject matter of the bribe." *Id.* The thing of value exchanged for the bribe

may be intangible.  *United States v. Marmolejo*, 89 F.3d 1185, 1191–93 (5th Cir. 1996); *see also Tillmon*, 2019 WL 921534, at *11 (considering methods for valuing intangible services under § 666(a)(1)(B)).

A court may take a number of approaches in valuing an intangible service. *See id.* at *11–13.  It may look to the value of the bribe.  *Id.* at *11.  It may also "look at the market value of the bribe from the perspective of the briber or an interested third party as a means of valuing the subject matter of the bribe."  *Id.* at *12.  In other words, it may look "to the value of the benefit the bribe-giver will receive if the bribe is successful."  *United States v. Hardin*, 874 F.3d 672, 676 (10th Cir. 2017) (internal quotation marks and citation omitted).  Under this market value approach, "in addition to evidence of something having value to the briber or a third party, the Government also must come forward with evidence 'linking' that valued item to the services the defendant provided."  *Tillmon*, 2019 WL 921534, at *12 (quoting *United States v. Owens*, 697 F.3d 657, 661 (7th Cir. 2012).

To illustrate, in *Tillmon* undercover FBI agents had paid the defendant, a police officer, to protect a caravan transporting what he thought were illegal drugs. *Id.* at *1–2.  The government argued that under the market value approach, it could show that the value of the defendant's protection services was $5,000 or more by pointing to the value of the drugs to the briber, which purportedly had a market value of a million dollars.  *Id.* at *12–13.  However, the court rejected this

argument, finding that the government had "failed to introduce *any* evidence allowing the inference that the value of Tillmon's services was connected to the value of the drugs," and the two were "merely tangentially related." *Id.* at *13. The court explained that:

> The Government could have attempted to provide evidence sufficient to create the necessary linkage in several ways. For example, it could have offered evidence that trafficking organizations typically provide protection with a cut of the profits from eventual sales. Or it could have offered evidence that the cost of legitimate protection for drug transports involving that amount of drugs costs real [trafficking organizations] $5,000 or more.

*Id.*

Here, the government argues that it has put forth two pieces of evidence sufficient to show that the value of the subject matter of the bribe — Workman's ensuring the continued release of KK on bond and making a favorable sentencing recommendation on behalf of KK — had a value of $5,000 or more. First, the government asserts that it showed that the value of the bond granted to KK in exchange for the sexual favors she provided to Workman was $5,000. It also notes that KK testified that she would have paid far in excess of $5,000 for freedom from incarceration via either a bond or a sentence of probation rather than incarceration. Thus, the government contends that the value of the benefit that KK received, release from incarceration, was at least $5,000, and under the market value approach, this measure can be used to determine the value of Workman's services.

I agree with the government and find that the evidence was sufficient to support the jury's conclusion that the charged conduct involved anything of value of $5,000 or more. In particular, by showing that KK remained on a $5,000 bond, the government showed that the value of the benefit KK received for her sexual favors bribe was $5,000. In addition, a reasonable jury could accept KK's testimony that her release from jail was priceless to her as evidence of the value of the benefit she received.

Moreover, the government has provided evidence supporting the inference that the value of Workman's services in ensuring KK's release on bond was more than tangentially linked to the value of the bond. After KK was first arrested, she was not released on bond. However, later after Workman obtained sexual favors from KK, she was assured of remaining on the $5,000 bond. A jury could reasonably infer from this evidence that Workman's services brought about her continued release on bond and thereby created value that she otherwise would not have received. *Cf. Owens*, 697 F.3d at 660 (reasoning that the government could have shown a sufficient link if it had shown how obtaining the issuance of home occupancy certificates "through greasing a palm rather than through legitimate means" created value for property owners beyond the value they would have received by using legitimate means); *United States v. Hines*, 541 F.3d 833, 837 (8th Cir. 2008) (finding that, where the subject matter of the bribe was the

defendant's timely execution of eviction orders, the $5,000 threshold was satisfied by testimony regarding the briber's substantial loss each day in property value, rent, and mortgage payments, in the absence of the timely execution of the orders). Thus, using the market value approach, the evidence was sufficient to show that the value of the subject matter of the bribe was $5,000 or more.

III.

For the foregoing reasons, it is **ORDERED** as follows:

1.      The defendant's oral Motion for Judgment of Acquittal, ECF No. 195, is DENIED;

2.      The defendant's oral Motion to Dismiss Count Two, ECF No. 199, is DENIED; and

3.      The defendant's second Motion for Acquittal, ECF No. 241, is DENIED.

ENTER:  May 2, 2019

/s/ *James P. Jones*
United States District Judge