# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | Case No. 1:18CR00020 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **SHADE CARLTON WORKMAN,** | ) | By: James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

*Thomas T. Cullen, United States Attorney, Roanoke, Virginia, and Zachary T. Lee and Lena L. Busscher, Assistant United States Attorneys, Abingdon, Virginia, for United States; Timothy W. McAfee, Timothy W. McAfee, PLLC, Big Stone Gap, Virginia, for Defendant.*

A jury in this court found defendant Shade Carlton Workman, a former Special Agent with the Virginia State Police, guilty of making false statements to the FBI, soliciting and accepting a bribe, and obstructing justice. The essence of the Government's case was that Workman, while head of a local drug task force, had obtained sexual favors from a confidential informant, in return for assisting the informant in her own case. Workman has moved the court to overturn the guilty verdict on the ground that the Government engaged in misconduct in violation of his Sixth Amendment right to a public trial by requiring some of Workman's fellow police officers to leave the courtroom during closing arguments. While I

agree that the Government engaged in improper conduct, I will deny the motion because the incident did not prejudice Workman.

I.

Based on my opportunity to assess the credibility of the witnesses during an evidentiary hearing on Workman's motion, the following are my findings of fact. Most of the facts are undisputed, but where there are inconsistencies, I have taken into account the rationality and internal consistency of the testimony, the extent of detail and coherent nature of the testimony, the manner of testifying by the witnesses, and the degree to which the subject testimony is consistent or inconsistent with other evidence in the case. In addition, Workman's counsel made a proffer of facts at the end of the hearing, which included the number of Virginia State Police ("VSP") employees who were present in and outside the courtroom during the time at issue. I will accept the uncontested portions of the proffer in my findings.

Workman's trial was held in the federal courthouse in Abingdon, Virginia. The occurrence at question took place on the morning of March 22, 2019, the fifth day of trial, and the day that closing arguments were to begin. Before the jury had entered the courtroom, eight VSP officers, all dressed in plain clothes, seated

themselves in the courtroom's spectators gallery.[1]  Three additional VSP employees were prepared to enter the courtroom, but had not done so.  Upon recognizing the VSP officers, United States Attorney Thomas T. Cullen, who was lead counsel for the Government at the trial, contacted his First Assistant United States Attorney, Daniel Bubar, who was not then present in Abingdon.  Cullen considered the VSP officers' presence to be a show of support for Workman, which he thought inappropriate given the VSP's investigation of Workman jointly with the United States Attorney's Office.  He was concerned that their presence could affect the working relationship between his office and the VSP in light of earlier tensions between the two regarding the federal prosecution of Workman. As a tactical matter, he also considered that the presence of the officers might help Workman's case in the eyes of the jury.  In light of these concerns, Cullen directed Bubar to inform VSP leadership of the officers' presence.  Cullen did not bring his concerns to the attention of the court.

Bubar immediately called Lieutenant Colonel Timothy Lyon, the head of the VSP's Bureau of Criminal Investigation, who was then attending a conference in

---

[1]  The spectators gallery of the courtroom in question seats approximately 100 persons, and is divided by a center aisle.  Inside the bar, the Government and the defense have separate counsel tables facing the bench, with the jury box to the side.  In this case, as is traditional, the Government's table was nearest to the jury box.  The gallery's first rows, nearest the Government and defense tables, are not available for spectators for security reasons.  It is not clear from the record exactly where the officers were seated, but most of them were on the defense side of the aisle, a few rows back from the bar.

Texas. Bubar told Lyon that he had received a call from Thomas Cullen, the U.S. Attorney for the Western District of Virginia, advising that VSP officers were getting ready to walk into the courtroom and sit down behind Workman. Bubar passed on from Cullen that "it's certainly inappropriate and it could affect our working relationship." Tr. 9, ECF No. 261.

After the telephone call, Lyon immediately contacted VSP Captain Jerry Joe Daniels, the local supervisor of Bureau of Criminal Investigation personnel, and asked him to determine whether any VSP employees were at the courthouse. Daniels contacted VSP First Sergeants Dave Belcher and Chuck Parsons, who were on their way to the courthouse, and upon their arrival, they reported to Daniels that 15 officers were preparing to enter the courtroom. Daniels reported this information to Lyon, and Lyon told Daniels to instruct the officers not to enter the courtroom. Daniels gave this instruction to Belcher and Parsons.

Daniels' instructions made their way to one of the VSP employees already seated in the courtroom, Sergeant Lily, who asked the others to leave the courtroom with him. Just as the jury was entering the courtroom to hear closing arguments, six of the eight VSP employees present stood up together and left the courtroom. None of these officers had testified at the trial and there is no evidence that any of them were known to the members of the jury or that any members of the jury knew that they were police officers.

On March 20, two days before the trial's closing arguments, Daniels and Lyon had spoken about a number of VSP employees who had approached Daniels about taking annual leave to attend closing arguments, including Sergeant Parsons. Lyon told Daniels he could not tell Parsons not to attend but that "it's a toxic situation," Tr. 48, ECF No. 261, and directed Daniels "to try and dissuade [Parsons] from attending." *Id.* Daniels relayed this message to Parsons and another employee.

II.

In his Motion to Dismiss, Workman argues that Cullen's actions violated his Sixth Amendment right to a public trial by setting in motion the ultimate exclusion of some of his supporters from the courtroom during his trial. The Government counters that no Sixth Amendment violation occurred because the courtroom was never closed to the public, the right to a public trial does not guarantee the attendance of particular individuals, and the officers' departure from the courtroom did not prejudice Workman. The Government also contends that it was Lieutenant Colonel Lyon, rather than the United States Attorney or his assistant, who ultimately directed the officers not to attend closing arguments, and that Lyon had a reasonable basis for doing so.

I find as a fact that had the Government not contacted Lyon, the spectators in question would not have been removed from the courtroom. It is of course true

that the Government itself did not direct Workman's supporters to leave, but the credible evidence shows that two days before trial, Lyon expressed the view that he could not or would not prevent VSP officers from attending the trial to support Workman. He merely directed their supervisor to try to persuade them not to attend, which obviously was not successful. It was only after First Assistant Bubar advised Lyon that United States Attorney Cullen wanted them out of the courtroom, and that their attendance could "affect the relationship" between the two law enforcement agencies, did Lyon make the decision to order them to leave.[2] United States Attorneys have significant authority and particularly since Lyon did not want his officers attending anyway, the message that one of the most important law enforcement officials in his state did not want VSP officers attending the trial, certainly made the difference. While I do not rule on whether the VSP can direct its off-duty officers not to attend a public trial, I find that it was the Government, and not the VSP, that in fact made the decision here.

It was wrong to have excluded the officers. There is no evidence that they were planning to make any sort of disturbance or indication of approval or disapproval during closing arguments. They were in plain clothes, with no visible

---

[2] At the hearing on the defendant's motion, Lyon testified that it was his recollection that he had told Daniels during their conversation on March 20 that his "decision" was that the VSP officers "should not be going to this trial." Tr. 31, EFC No. 261. Daniels, who had contemporaneous notes of the conversation, testified that Lyons stated that "he could *not* tell [an officer] not to attend" the trial. *Id.* at 48 (emphasis added). Under the circumstances, I credit Daniels' testimony.

indication that they were police officers. I was on the bench when they left, and while at the time I did not know who they were or why they were leaving, I observed that their departure was in a perfectly dignified manner. As far as I can determine, they were there only to show a fellow police officer that they supported him. In addition, of course, the United States Attorney did not bring the matter to my attention, which clearly would have been the appropriate course of action. The court, and not the litigants or their attorneys, controls the courtroom and who may be present or not. Regretfully, I find that the United States Attorney made a serious error in judgment in obtaining the removal of the officers.

In spite of my finding that the officers should not have been removed, I also find that their removal does not justify setting aside the jury's verdict. It is of course correct that the Sixth Amendment affords a defendant the right to a public trial, which means that spectators must not be excluded without cause. *See Bell v. Evatt*, 72 F.3d 421, 432–33 (4th Cir. 1995). However, prosecutorial misconduct must be sufficiently prejudicial in order to afford the defendant relief from a conviction. *See United States v. Umaña*, 750 F.3d 320, 351 (4th Cir. 2014). There was no prejudice shown here, particularly in view of the likelihood that the jury was not even aware as they entered the courtroom that certain persons were leaving the courtroom at the same time, or if they were aware, what it meant. The courtroom had a number of spectators present for closing arguments, and even if

the officers had not been removed, the reason for their presence would have been beyond the knowledge of the jury. I cannot find that the outcome of the case was influenced in any way by the fact that certain of the defendant's fellow police officers were not present for closing arguments.

III.

For these reasons, it is **ORDERED** that the Motion to Dismiss, ECF No. 225, and the Amended Motion to Dismiss, ECF No. 240, are DENIED.

ENTER: August 15, 2019

/s/ *James P. Jones*
United States District Judge